Filed 8/11/21  Jiang v. Cai CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| DANNING JIANG,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JAMES CAI et al.,<br><br>    Defendants and Respondents. | D078846<br><br><br>(Super. Ct. No. 19CV341417)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on July 30, 2021, be modified as follows:

1. On page 26, the last sentence that starts on line 3 with "Further," is modified to read as follows:

> Further, as prevailing defendants in an anti-SLAPP appeal, Cai and SAC Attorneys LLP are entitled to their attorney fees to the extent they have incurred recoverable attorney fees.

> There is no change in the judgment.

> The petition for rehearing is denied.

McCONNELL, P. J.

Copies to:  All parties

Filed 7/30/21  Jiang v. Cai CA4/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DANNING JIANG, | D078846 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 19CV341417) |
| JAMES CAI et al., | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of Santa Clara, Mary E. Arand, Judge.  Affirmed.

Law Offices of Danning Jiang, Danning Jiang and Fei Liu for Plaintiff and Appellant.

SAC Attorneys and Brian A. Barnhorst for Defendants and Respondents.


I

INTRODUCTION

Plaintiff Danning Jiang appeals an order granting a special motion to strike filed by defendants James Cai and SAC Attorneys LLP (SAC) pursuant

to the anti-SLAPP statute (Code Civ. Proc., § 425.16).[1]  He argues the trial court erred:  (1) in permitting the defendants to file their anti-SLAPP motion more than 60 days after service of the complaint; (2) in finding the defendants' conduct was not illegal as a matter of law; and (3) in finding he did not establish a probability of prevailing on his abuse of process, malicious prosecution, and unfair business practices claims.

We reject these contentions.  Therefore, we affirm the order granting the defendants' anti-SLAPP motion.

## II

## BACKGROUND

## A

### *The Underlying Action*

In 2013, a printed circuit board (PCB) company called TX Trading & TX Solutions, Inc. (TX) entered into a cooperation agreement with a business partner, Shenzhen Edadoc Technology Co., Ltd. (Shenzhen), to promote the design, fabrication, assembly, and parts sourcing of PCBs.  The cooperation agreement was written in Chinese.

The parties subsequently retained Jiang—a San Jose-based attorney—to draft a joint venture agreement in English.  Jiang prepared the joint venture agreement, the expressed purpose of which was to "create [a] Joint Venture solely to develop and operate PCB design, manufacture, material procurement, and marketing services."  Shenzhen and TX's owners executed the joint venture agreement at a meeting in January 2014.  The joint venture later fell apart for reasons that are not clear from the record.

---

[1]    Further undesignated statutory references are to the Code of Civil Procedure.

In 2016, a complaint in interpleader was filed against the joint venture and TX's owners to determine the claimants' interests in certain disputed funds. Two cross-complaints were filed in the interpleader action, referred to hereafter as the underlying action. Jiang filed one cross-complaint on behalf of the joint venture against TX and its owners. Cai—a San Jose-based attorney and partner at the SAC law firm—filed the other cross-complaint on behalf of TX and its owners against the joint venture, Shenzhen, Shenzhen's owners, and Jiang.

Cai's cross-complaint asserted misrepresentation and unfair competition claims against Jiang.[2] It alleged Jiang misrepresented the contents of the joint venture agreement to TX's owners, who did not speak English as a first language. It alleged Jiang told TX's owners the joint venture agreement was exactly the same as the prior Chinese-language cooperation agreement, when in fact it superseded the cooperation agreement and contained new terms that were disadvantageous to TX's owners. Further, it alleged Jiang presented the joint venture agreement to TX's owners for the first time at the January 2014 meeting, which caused them to execute the agreement "hastily and on the spot ...." TX's owners signed verifications attesting under penalty of perjury that they reviewed the cross-complaint and the facts contained therein were true.

After the cross-complaint was filed, Jiang wrote a letter to Cai denying the allegations against him. He stated the signatories to the joint venture agreement negotiated for a month before signing. Jiang demanded that Cai "immediately withdraw the cross-complaint against [him]," (bolding omitted)

---

[2] The cross-complaint also stated causes of action against Jiang for breach of fiduciary duty and negligence. Those causes of action were omitted from amended versions of the cross-complaint.

or he would seek sanctions against Cai and his clients for maintaining a frivolous action. Jiang stated he would also seek damages from Cai and his clients for malicious prosecution and intentional interference with contractual relations. It is unclear from the record whether Cai responded to the letter. In any event, he did not dismiss his clients' cross-complaint.

In February 2017, Jiang deposed TX's owners. During the depositions, TX's owners admitted Jiang emailed a draft of the joint venture agreement to them prior to the January 2014 meeting. These admissions contradicted one of the allegations from the cross-complaint they filed against Jiang.

Notwithstanding his clients' admissions, Cai did not dismiss or seek leave to amend the cross-complaint. Instead, he propounded written discovery on Jiang and deposed Jiang and his clients.

In July 2017, Cai was substituted out as legal counsel due to a potential conflict of interest with his clients. In January 2018, the parties mediated their dispute. They executed a confidential settlement agreement and filed a joint request to dismiss the underlying action in its entirety. The court granted their dismissal request on March 29, 2018.[3]

B

*The Current Action*

On January 18, 2019, Jiang filed a complaint against Cai and SAC for abuse of process and wrongful use of civil proceedings (malicious

---

[3] The terms of the settlement agreement are not apparent from the record and were not disclosed to Cai. Cai served one of TX's owners with a subpoena for the production of business records; however, Jiang moved to quash service of the subpoena. The trial court granted Jiang's motion to quash service of the subpoena based on the defendants' failure to personally serve TX's owner with the subpoena.

4

prosecution).  The complaint was personally served on the defendants on February 4, 2019.

For the abuse of process claim, Jiang alleged the defendants filed the cross-complaint on behalf of their former clients, took Jiang's deposition, and propounded discovery against Jiang to "intimidate and harass" him.  He alleged the defendants "failed to investigate" their former clients' allegations, even after he "warned" them and asked them to "drop the false claims."

For the malicious prosecution claim, Jiang alleged the defendants "were actively involved in bringing and continuing" the underlying action, which "ended" in his favor.  He alleged no reasonable person would have believed there were reasonable grounds to bring the lawsuit and the defendants acted "primarily for a purpose other than succeeding on the merits of the claim[s]."

On January 30, 2019, Jiang amended his complaint to add a claim against the defendants for unfair business practices under the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200).  The UCL claim alleged the defendants engaged in unlawful conduct in violation of four Penal Code provisions:  (1) section 118, subdivision (a) (perjury); (2) section 127 (subornation of perjury); (3) section 182 (conspiracy); and (4) section 138 (witness bribery).  The amended complaint was served on the defendants by mail on February 11, 2019.

C

*The Anti-SLAPP Motion*

On April 10, 2019, defense counsel sent an email to Jiang stating the defendants intended to file an anti-SLAPP motion and would seek ex parte relief to "file a longer memo" in support of the forthcoming motion.  He asked

5

whether Jiang intended to appear at the ex parte proceeding. Jiang did not reply to the email prior to the ex parte proceeding.

The following day, the defendants filed an ex parte application requesting permission from the court: (1) to file an enlarged brief for the anti-SLAPP motion; and (2) to file the anti-SLAPP motion more than 60 days after service of the amended complaint. Jiang did not oppose the ex parte application or appear at the ex parte proceeding. The court granted the request and ruled the defendants could file an anti-SLAPP motion with an enlarged memorandum more than 60 days after service of the amended complaint—specifically, on or before April 30.

Soon after, Jiang filed an ex parte application to vacate the court order extending the defendants' filing deadline. He argued the defendants procured the extension through "surprise, mistake, or fraud" because they failed to give Jiang proper notice that they would be requesting an extension of their deadline to file an anti-SLAPP motion. There is no reporter's transcript for the hearing on Jiang's ex parte application; therefore, we have no record of what transpired during the proceeding. However, we do know the court denied Jiang's ex parte application in relevant part. In doing so, the court used a proposed order filed by Jiang and modified it in two respects: (1) by crossing out a provision that stated the court would strike its prior order extending the defendants' filing deadline; and (2) by adding the following statement in handwritten text: "[Jiang] has reserved [his] right to object to the timing of the motion."

On April 16, 71 days after service of the original complaint and 64 days after service of the amended complaint, the defendants filed the anti-SLAPP motion. They argued Jiang's claims were based on protected statements and

6

writings made before a judicial proceeding or in connection with an issue under consideration by a judicial body.

The defendants also argued Jiang could not establish a probability of success for any of his claims. They asserted the litigation privilege codified in Civil Code section 47, subdivision (b) barred the abuse of process and UCL claims. They asserted the abuse of process claim was time-barred and, in any event, Jiang failed to plead a legally sufficient claim. They argued Jiang failed to plead, and could not prove, any of the elements of the malicious prosecution claim. Finally, they asserted Jiang failed to plead, and could not prove, any of the unlawful conduct underpinning the UCL claim.

Together with the anti-SLAPP motion, the defendants filed a declaration from Cai. Cai averred he believed in good faith that his former clients' claims were meritorious, in part, because they verified the cross-complaint. He averred his former clients admitted during their depositions that they received a copy of the joint venture agreement before signing it, but they did not make any other concessions that cast doubt on the veracity of the cross-complaint. Further, Cai averred he propounded discovery after his former clients' depositions to "determine the truth about the conflicting allegations." Cai denied harboring malice or ill will towards Jiang, filing or maintaining the cross-complaint for an improper purpose or with an ulterior motive, or forming any agreement with his former clients to commit perjury.

Jiang opposed the anti-SLAPP motion. He argued the motion was untimely as to the abuse of process and malicious prosecution claims because he alleged those claims in the original complaint, yet the defendants did not file the anti-SLAPP motion until 71 days after service of the original complaint.

7

Next, Jiang argued the defendants' conduct was illegal as a matter of law and, therefore, it fell outside the protection of the anti-SLAPP statute under the principles discussed in *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*). Without citation to evidence, Jiang argued the defendants' conduct was illegal because the defendants "aided their clients to commit [a] perjury" and "conspired with [their] clients to distort the truth."

Finally, Jiang argued there was a probability he would prevail on his claims. He claimed the litigation privilege did not apply because the defendants knew their former clients' allegations were false when they filed the cross-complaint and propounded discovery on him. He asserted the defendants acted with an ulterior motive—an element of an abuse of process claim—because they hoped the cross-complaint would expose him to "State Bar disciplinary actions" and "force [him] to resign" from the underlying action. Without citation to evidence, Jiang argued the underlying action was resolved in his favor—an element of the malicious prosecution claim— because "[i]n the end, [the defendants' former] clients voluntarily dropped the claims" against him. Further, without citation to evidence, he argued he could prevail on his UCL claim because the defendants "conspired with [their] clients to commit perjury" and "attempted to bribe" him.

Together with the opposition brief, Jiang filed a declaration in which he denied the allegations that were made against him in the underlying action. He averred the defendants were "hostile" to him and had an "evil intent to frame [him] up" because he and the defendants were opposing counsel in "various matters," including the underlying action. Further, Jiang averred that Cai attempted to bribe him during the underlying action. He alleged Cai offered to dismiss him as a cross-defendant if he persuaded his clients to mediate their case with the defendants' former clients. Jiang averred this

8

"poisonous" offer would have "tainted [him] as a witness," so he declined the offer.

Jiang also filed objections to the evidence submitted with the anti-SLAPP motion. Of significance here, Jiang asserted relevance, hearsay, and personal knowledge objections to two categories of averments made in Cai's declaration. The first set of averments purported to summarize the events leading to the execution of the joint venture agreement. The second set of averments stated TX's owners (Cai's former clients) "continued to insist" that many of the allegations from the cross-complaint were true—e.g., that Jiang misrepresented the contents of the joint venture agreement—even though they received the joint venture agreement prior to the January 2014 meeting.

The defendants filed a reply brief in support of the anti-SLAPP motion.

On August 8, the trial court granted the anti-SLAPP motion. It declined to rule on Jiang's evidentiary objections in relevant part, reasoning that the objections were "not material in resolving issues raised by the motion." Then, the court rejected Jiang's claim that the anti-SLAPP motion was untimely. It noted the defendants filed ex parte requests for permission to file their anti-SLAPP motion after the 60-day deadline and "[t]he Court, finding good cause, granted the requests thus allowing Defendants to file their motion on or before April 30, 2019." Because the defendants filed their anti-SLAPP motion on April 16, the court found the anti-SLAPP motion was "timely filed" and would be "addressed on its merits."

The court found the acts giving rise to Jiang's claims—the filing of a cross-complaint, the propounding of written discovery, and the taking of Jiang's deposition—were protected because they were made "in connection with an issue under consideration or review by a … judicial body …." (§ 425.16, subd. (e)(2).) The court rejected Jiang's assertion that the

9

defendants' conduct was illegal as a matter of law. It reasoned the defendants did not concede the illegality of their conduct and it was not "clear what crime" the defendants allegedly committed. To the extent Jiang argued the defendants aided or abetted a conspiracy to commit perjury, the court noted the defendants disputed Jiang's contention and submitted evidence suggesting Cai believed his litigation activities were justified. According to the court, the existence of a factual dispute precluded a finding of illegality as a matter of law.

Finally, the court found Jiang did not establish a probability of success for his claims. It found the litigation privilege barred the abuse of process and UCL claims. It found Jiang did not plead a legally sufficient abuse of process claim because he did not allege the defendants had an ulterior motive. For the malicious prosecution claim, the court found Jiang: (1) did not establish that the underlying action terminated in his favor; (2) did not plead a legally sufficient claim because he did not plead the element of malice; and (3) did "not address the element of damages …." Finally, the court found Jiang did not plead a legally sufficient UCL claim because there were "no underlying facts alleged in the [complaint] to support any of the violations of the Penal Code …."[4]

Based on these findings, the court granted the anti-SLAPP motion and struck the complaint.

---

[4] The court expressly declined to rule on the defendants' assertion that the abuse of process claim was untimely.

10

# III

## DISCUSSION

### A

*Legal Standards*

"Enacted by the Legislature in 1992, the anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).)

"A court evaluates an anti-SLAPP motion in two steps. 'Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." ' [Citation.] If the plaintiff fails to meet that burden, the court will strike the claim." (*Wilson, supra*, 7 Cal.5th at p. 884.)

"The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.] To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for

11

liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute." (*Wilson, supra*, 7 Cal.5th at p. 884.) Of relevance here, the anti-SLAPP statute protects "any written or oral statement or writing made ... in connection with an issue under consideration or review by a … judicial body …." (§ 425.16, subd. (e).)

The second step of the anti-SLAPP analysis has been described as a summary judgment-like procedure. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater Union*).) The court determines whether " 'the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.' " (*Ibid.*) The plaintiff " 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Ibid.*) The defendant may submit evidence in support of its motion. (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.) However, " '[t]he court does not weigh evidence or resolve conflicting factual claims.' " (*Sweetwater Union*, at p. 940.) Rather, the court "accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed." ' " (*Ibid.*)

We review an order granting an anti-SLAPP motion de novo. (*Sweetwater Union, supra*, 6 Cal.5th at p. 940.)

B

*Timeliness*

An anti-SLAPP motion "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." (§ 425.16, subd. (f).) A court has "considerable discretion" in

deciding whether to permit the filing of an anti-SLAPP motion more than 60 days after service of the complaint. (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 787.) In its exercise of discretion, the court should consider whether the filing would be consistent with the purpose of the anti-SLAPP statute—i.e., whether it would ensure the prompt resolution of a lawsuit that impinges on a defendant's free speech rights. (*Id.* at p. 776.)

In the present case, it is undisputed the court extended the time for the defendants to file their anti-SLAPP motion until April 30, 2019. However, Jiang claims the court thereafter "reserv[ed] the timing issue" for consideration at a later date—effectively nullifying its prior extension order—while ruling on Jiang's ex parte request to strike the court order extending the defendants' filing deadline. According to Jiang, the court then misconstrued its own nullification order when it later found the anti-SLAPP motion was timely simply because the defendants filed their motion prior to the previously-extended, now-nullified deadline of April 30.

In the order denying Jiang's ex parte application, the court crossed out the portion of Jiang's proposed order that would have stricken the filing extension for the anti-SLAPP motion and added a handwritten statement that reads, "*Plaintiff has reserved its right to object* to the timing of the motion." (Italics added.) This statement means just what it says—Jiang reserved his right to *object* to the timeliness of the motion—i.e., he did not waive his timeliness objections. It did not grant Jiang's ex parte application to strike the order extending the filing deadline. It did not state the court had reconsidered its extension of the filing deadline. And it did not state the court would later reassess its extension of the filing deadline. On this record—which is all we have, given the absence of a reporter's transcript—we

13

are not persuaded the trial court ever nullified or reconsidered its prior order extending the defendants' deadline to file their anti-SLAPP motion.

Even if the court nullified its order extending the defendants' filing deadline, and then subsequently erred by misconstruing its own nullification order, the asserted error did not produce a miscarriage of justice. (Cal. Const. art. VI, § 13 ["No judgment shall be set aside … unless … the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].) The defendants filed their anti-SLAPP motion just 71 days after service of the complaint—a mere 11 days after the default 60-day filing deadline expired. Very little motion practice and virtually no discovery had occurred.[5] Further, Jiang did not argue he suffered any prejudice as a result of the brief 11-day delay. Given these facts, Jiang has not persuaded us that it is reasonably probable the trial court would have denied the anti-SLAPP motion on timeliness grounds but for the alleged error.

C

*Anti-SLAPP Step One*

The trial court found Jiang's claims were based on acts performed in connection with an issue under consideration or review by a judicial body.

---

[5]    After the defendants filed the anti-SLAPP motion, Jiang moved to conduct discovery to oppose the anti-SLAPP motion (§ 425.16, subd. (g)). The trial court denied Jiang's motion in a lengthy order analyzing the sufficiency of the pleadings, the viability of Jiang's claims, and the relevance of the requested discovery.

On appeal, Jiang argues in passing that the court erred when it denied his request to conduct discovery. By failing to provide substantive analysis or legal support for his argument, Jiang has forfeited his challenge to the order denying his motion to conduct discovery. (*In re A.C.* (2017) 13 Cal.App.5th 661, 672 ["If an argument in an appellate brief is supported by only an opinion or argument of appellant's counsel without 'citation to any recognized legal authority,' that argument may be deemed waived for failure to present supporting substantive legal analysis."].)

14

(§ 425.16, subd. (e)(2).) The anti-SLAPP statute generally protects such acts. (*Id.*, subd. (b)(1).) Jiang does not challenge the court's finding; therefore, we will assume without deciding the trial court's finding was correct. Nonetheless, Jiang argues the court erred in finding the defendants satisfied their burden under the first step of the anti-SLAPP analysis. In particular, he claims the defendants' conduct was illegal as a matter of law and thus fell outside the protection of the anti-SLAPP law.

The anti-SLAPP statute does not apply to "speech or petition rights if, as a matter of law, that activity was illegal and by reason of the illegality not constitutionally protected." (*Flatley, supra*, 39 Cal.4th at p. 316.) The "exception for illegal activity is very narrow and applies only in undisputed cases of illegality. (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1478 (*Zucchet*).) Illegality as a matter of law exists only if the defendant concedes its illegal conduct or the evidence conclusively establishes the illegality. (*Flatley*, at p. 316; see *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 424 ["The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step."].) "If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley*, at p. 316.) For the illegality exception to apply, the defendants' conduct must be criminal and not merely violate a statute. (*Klem v. Access, Ins. Co.* (2017) 17 Cal.App.5th 595, 610.)

Jiang claims the defendants engaged in two types of illegal conduct. For the first type, Jiang alleges the defendants aided and abetted perjury (Pen. Code, § 118, subd. (a)), suborned perjury (*id.*, § 127), and conspired to commit perjury (*id.*, § 182), when they knowingly prepared, filed, and asked

15

their clients to verify a false cross-complaint.  The defendants do not concede this illegal conduct.  Therefore, the illegality exception applies only if the evidence conclusively demonstrates the illegality.  It does not do so.

Together with the anti-SLAPP motion, the defendants filed a declaration in which Cai averred he in good faith believed his former clients' claims were meritorious (paragraphs 15 and 34), did not know the cross-complaint included false allegations (paragraph 24), and did not form an agreement with his former clients to verify false pleadings (paragraph 36).  At the least, this creates disputed factual issues concerning the defendants' knowledge and intent.  This disputed factual issue precludes a finding of illegality as a matter of law.[6]  (See *Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 150–153 [disputed factual issues precluded application of illegality exception]; *Zucchet, supra*, 229 Cal.App.4th at pp. 1479–1480 [same].)

Jiang claims the defendants engaged in a second form of illegal conduct as well.  He argues Cai offered to dismiss him as a cross-defendant in the underlying action if, in exchange, he persuaded his clients to mediate their dispute with the defendants' former clients.  According to Jiang, this conduct constituted witness bribery under Penal Code section 138, subdivision (a).

---

[6]    As previously noted, Jiang objected to two portions of Cai's declaration—(1) its summary of the alleged facts giving rise to the cross-complaint (paragraph 8); and (2) its statements that the defendants' former clients insisted various allegations in their cross-complaint were true (paragraphs 13 and 14).  The trial court declined to rule on these objections.

On appeal, Jiang contends the court erred in declining to rule on the objections because, had it done so, it would have sustained them and ruled the defendants' conduct was illegal as a matter of law.  We do not decide whether the court erred in declining to rule on the objections because *other* portions of Cai's declaration—which are discussed above and were unchallenged in the trial court—established a factual dispute regarding the legality of the defendants' conduct.  Therefore, any error in failing to rule on the evidentiary objections was harmless.

The defendants do not concede, and the evidence does not conclusively establish, the alleged witness bribery. A defendant violates Penal Code section 138, subdivision (a) if he or she bribes or offers to bribe a person on the "understanding or agreement that the person shall not attend upon any trial or other judicial proceeding," or attempts through a bribery offer "to dissuade any person from attending upon any trial or other judicial proceeding …." Even if Cai made the alleged proposal at issue (a point the defendants do not concede), there is no suggestion that he made the alleged proposal *to dissuade Jiang from attending a trial or judicial proceeding*. Thus, the evidence of a dismissal offer—while it may raise potential conflict of interest concerns—does not conclusively establish witness bribery.[7]

In sum, the defendants do not concede illegal conduct and the evidence does not conclusively demonstrate illegal conduct. Therefore, the trial court properly found that the illegality exception does not apply.

D

*Anti-SLAPP Step Two*

At the second step of the anti-SLAPP analysis, Jiang bore the burden of establishing, through competent and admissible evidence, that he had a probability of prevailing on his claims. (*Sweetwater Union, supra*, 6 Cal.5th at p. 940.) The court found Jiang did not satisfy this burden with respect to any of his claims. In the following section, we will address each of Jiang's claims in the order he alleged them in his amended complaint.

---

[7] Jiang claims Cai's purported offer to dismiss Jiang from the underlying action constituted commercial bribery in violation of Penal Code section 641.3, subdivision (d). Jiang did not make this argument in the trial court. Therefore, the argument is forfeited. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419 (*Holden*).)

## 1
### *Abuse of Process Claim*

"The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) "To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Id.* at p. 1057.)

Jiang alleged the defendants committed the tort of abuse of process based, at least in part, on the following acts: (1) the defendants' filing of a cross-complaint against Jiang; (2) the defendants' propounding of written discovery requests on Jiang; and (3) the defendants' taking of Jiang's deposition. The trial court found Jiang's abuse of process claim did not have minimal merit, among other reasons, because the defendants' acts were protected by the litigation privilege set forth in Civil Code section 47, subdivision (b). We agree with the trial court.

The litigation privilege "generally protects from tort liability any publication made in connection with a judicial proceeding." (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952 (*Jacob B.*).) It " 'applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment Association, Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) The privilege "is absolute in nature, applying

'to *all* publications, irrespective of their maliciousness.' " (*Ibid.*; see *Jacob B.*, at p. 955 ["It is absolute and applies regardless of malice."].) " 'The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Action Apartment*, at p. 1241.) To achieve this purpose, the litigation privilege is given a broad interpretation. (*Ibid.*; *Jacob B.*, at p. 955.)

Jiang does not dispute that the litigation privilege applies to the defendants' filing of the cross-complaint, propounding of written discovery, and deposition questioning. (See *Rubin v. Green* (1993) 4 Cal.4th 1187, 1195 [privilege applied to filing of pleadings]; *Twyford v. Twyford* (1976) 63 Cal.App.3d 916, 924 [privilege applied to request for admission]; *Younger v. Solomon* (1974) 38 Cal.App.3d 289, 301 [privilege applied to interrogatory]; *Thornton v. Rhoden* (1966) 245 Cal.App.2d 80, 82–83, 85 [privilege applied to questions at deposition].) Therefore, we will assume without deciding that these acts were subject to the litigation privilege and the court properly granted the anti-SLAPP motion to the extent Jiang's abuse of process claim was based on these acts.

Nonetheless, Jiang contends the litigation privilege does not preclude his abuse of process claim in its entirety. He argues the claim was based, at least in part, on certain noncommunicative acts of the defendants. In particular, he argues his claim was based on the defendants' *failure* to act after it became apparent the cross-complaint was meritless—namely, their failure to amend the cross-complaint, dismiss the cross-complaint, or withdraw as legal counsel in the underlying action.

Jiang did not assert his argument concerning noncommunicative acts in the trial court. Therefore, the argument is forfeited. (*Holden, supra*, 43

19

Cal.App.5th at p. 419.)  Because Jiang has asserted no other arguments concerning the applicability of the litigation privilege, Jiang's forfeiture provides a sufficient basis for us to affirm the trial court's finding that the litigation privilege barred his abuse of process claim.

In any event, Jiang's noncommunicative conduct argument is meritless. " 'Because the litigation privilege protects only publications and communications, a "threshold issue in determining the applicability" of the privilege is whether the defendant's conduct was communicative or noncommunicative.' [Citations.]  However, 'if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct ....  Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies.' " (*Jacob B., supra*, 40 Cal.4th at p. 957.)

The gravamen of Jiang's abuse of process claim was that the defendants filed a cross-complaint containing false allegations (and thereafter propounded discovery regarding those allegations).  As previously noted, it is undisputed that the filing of the cross-complaint was communicative and protected by the litigation privilege.  Although Jiang attempts to evade the litigation privilege by highlighting the defendants' supposed *inaction* after the cross-complaint was filed—i.e., their failure to withdraw from the case or amend or dismiss the cross-complaint—those acts are necessarily related to the precedent act of filing the cross-complaint.  In short, the very reason the defendants purportedly needed to withdraw from the underlying action, amend the cross-complaint, or dismiss the cross-complaint was because they filed the false cross-complaint in the first place.

20

Because the filing of the cross-complaint was the gravamen of Jiang's abuse of process claim, the litigation privilege not only applied to that communicative act; it extended to related noncommunicative acts and barred Jiang's abuse of process claim in its entirety. (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1492 (*Feldman*) ["Clearly, the litigation privilege applies to the tort causes of action of the cross-complaint to the extent that the gravamen of the cause of action is the assertedly tortious filing of the [lawsuit]"]; accord *Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 846–847 [litigation privilege applied to defendant's alleged failures to act because they were necessary corollaries to defendants' communicative act].)

In view of our conclusion that the litigation privilege precluded the abuse of process claim, we do not consider the trial court's alternative bases for finding that the abuse of process claim lacked minimal merit.

2

*Malicious Prosecution Claim*

The tort of malicious prosecution has three elements. The plaintiff must establish there was an underlying litigation that was "(i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice." (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775–776.)

The trial court found Jiang did not demonstrate a probability of success on his malicious prosecution claim for several reasons. Pertinent here, it found Jiang did not establish, with at least minimal merit, that the underlying action terminated in his favor. The court reasoned Jiang did not attempt to explain why the termination of the underlying action was

21

favorable to him and, further, the existence of a settlement agreement "raise[d] doubts as to whether the termination of the [u]nderlying [a]ction was favorable" to him. Once again, we agree with the trial court.

" ' "The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused ...." ' " (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 741.) "To determine whether a party has received a favorable termination, we consider ' "the judgment as a whole in the prior action...." [Citation.]' [Citation.] Victory following a trial on the merits is not required. Rather, ' "the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." ' " (*Ibid.*) " 'If the termination does not relate to the merits— reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.' " (*Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399 (*Sycamore Ridge*).)

Generally, "[a] voluntary dismissal is presumed to be a favorable termination on the merits ...." (*Sycamore Ridge, supra*, 157 Cal.App.4th at p. 1400.) " 'The [presumption] arises from the natural assumption that one does not simply abandon a meritorious action once instituted.' " (*Ibid.*) However, "[a] dismissal resulting from negotiation, settlement, or consent is generally not deemed a favorable termination of the proceedings." (*Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 827, fn. 4; see *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 342 [listing dismissal pursuant to a settlement as an example of a non-favorable termination]; *Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 794, fn. 9 ["termination of an action by compromise or settlement has been held to be an insufficient basis for a malicious prosecution action"].) " ' "[T]he dismissal reflects ambiguously on

22

the merits of the action as it results from the joint action of the parties, thus leaving open the question of defendant's guilt or innocence. [Citation.]" [Citation.] After all, "[t]he purpose of a settlement is to *avoid* a determination of the merits." ' " (*Dalany v. American Pacific Holding Corp.* (1996) 42 Cal.App.4th 822, 827.)

In his opening brief, Jiang asserts the underlying action terminated in his favor because the defendants' former clients voluntarily and unilaterally dismissed their cross-complaint. The record disproves this unfounded claim. In Jiang's anti-SLAPP briefing, as well as many other filings, Jiang conceded the parties to the underlying action—including Jiang himself—negotiated and executed a settlement agreement resulting in the termination of the underlying action. Jiang even filed a declaration from himself and his former client (Shenzhen's owner) confirming that the parties mutually resolved their dispute. Further, the request for dismissal from the underlying litigation was a joint request to dismiss the entire underlying action, not a unilateral request to dismiss the defendants' former clients' cross-complaint. Thus, the uncontroverted evidence established that the underlying action was terminated as a result of a mutually negotiated settlement.

In his reply brief, Jiang urges us to ignore the parties' settlement and conclude that, *in effect*, the defendants' former clients unilaterally dismissed their cross-complaint. Jiang emphasizes that he never asserted any personal claims against the defendants' former clients in the underlying action and, therefore, he "did not have any claim[s] to give up" as part of the settlement. This argument is forfeited because it was not made in the opening brief. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4.)

Regardless, the mere fact that Jiang did not have pending claims to "give up" does not mean the settlement lacked consideration. A negotiated

settlement—which undoubtedly occurred here—can take many forms. The dismissal of pending claims is merely one type of consideration that can form the basis of a settlement, the existence of which can preclude a favorable termination finding in a malicious prosecution case. (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1338 ["[T]he actual amount or subjective value of the consideration given by [a party] as part of the settlement agreement … is immaterial to any consideration of whether [a malicious prosecution plaintiff] can show a termination of the lawsuit in his favor."]; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 27 (*Ludwig*) ["A simple waiver of costs is alone enough to disqualify a settlement as a 'favorable termination.' "].)

Admittedly, we are somewhat in the dark about the particulars of the settlement agreement that resolved the underlying action. Jiang—the only party with access to the settlement agreement—has not disclosed the terms of the settlement to the court and instead has described it in deliberately vague and evasive ways. For instance, in the declaration Jiang filed with his anti-SLAPP opposition brief, he cryptically averred the defendants' former clients claimed $2 million in damages, yet during settlement discussions lowered this amount to a demand of "$150,000, later on to $120,000, and finally to …[.] The action was eventually amicably resolved."

But this ambiguity does not inure to Jiang's benefit. At the second anti-SLAPP step, the burden rested on Jiang to establish, through competent and admissible evidence, a probability that he could prove a favorable termination. He did not meet this burden. Jiang's evidence showed the underlying action was terminated by way of a mutual settlement and a joint request to dismiss the entire case—a resolution at odds with the very notion of a favorable termination. Further, Jiang presented no evidence suggesting the settlement reflected on the merits of the underlying action. On this

24

record, we cannot say that Jiang carried his burden of establishing a probability of success on the element of a favorable termination. (*Citizens of Humanity, LLC v. Ramirez* (2021) 63 Cal.App.5th 117, 127–128 [settlement precluded malicious prosecution plaintiff from establishing probability of success on element of favorable termination]; *Ludwig, supra*, 37 Cal.App.4th at pp. 26–30 [same].) Because Jiang did not demonstrate a probability of success on the favorable termination element, the trial court properly struck Jiang's malicious prosecution claim.

3

*UCL Claim*

The trial court found Jiang did not establish a probability of success on his UCL claim because the litigation privilege barred the claim. Alternatively, the court found Jiang did not establish a probability of success because Jiang failed to plead a legally sufficient UCL claim.

We do not consider whether Jiang pleaded a legally sufficient UCL claim because Jiang has not established that the court erred in finding that the litigation privilege barred his claim. To the extent Jiang's UCL claim was based on the conduct underlying his abuse of process claim, the litigation privilege precluded the UCL claim for the same reasons discussed earlier in this opinion. (*Feldman, supra*, 160 Cal.App.4th at p. 1498.) To the extent his UCL claim was based on other conduct (such as the defendants' alleged attempt to bribe him), he has not presented any substantive legal analysis regarding the applicability of the litigation privilege. Therefore, Jiang has waived his challenge to the trial court's finding concerning the litigation privilege. (*In re A.C., supra*, 13 Cal.App.5th at p. 672.)

25

IV

DISPOSITION

The order granting the anti-SLAPP motion is affirmed.  Cai and SAC
Attorneys LLP are entitled to their appellate costs.  (Cal. Rules of Court, rule
8.278(a)(2).)  Further, as prevailing defendants in an anti-SLAPP appeal, Cai
and SAC Attorneys LLP are entitled to their attorney fees.  (*RGC Gaslamp,
LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 438.)


McCONNELL, P. J.

WE CONCUR:


DATO, J.


GUERRERO, J.

26